# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| MELINDA MONAGHAN,<br><br>    Plaintiff,<br><br>-vs-<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>    Defendant. | Case No. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, MELINDA MONAGHAN (hereinafter "Plaintiff"), by and through her undersigned counsel, for her cause of action against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter "Experian"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

## PRELIMINARY STATEMENT

1. This is an action alleging Experian violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (FCRA) by producing and selling credit reports inaccurately reporting Plaintiff as "deceased", and thereby failing to follow policies and procedures to ensure the maximum possible accuracy of the credit report it produced and sold.

1

2. The FCRA creates a private right of action against a consumer reporting agency for the negligent, 15 U.S.C. § 1681o, or willful, 15 U.S.C. § 1681n, violation of any duty imposed by the FCRA. *Alexander v. Certegy Check Servs.*, No. 8:16-CV-859-17JSS, 2016 U.S. Dist. LEXIS 180072, at *5 (M.D. Fla. Dec. 29, 2016) (*citing Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015)).

3. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

4. Plaintiff seeks entry of judgment, actual damages, statutory damages, punitive damages, costs, and attorneys' fees. 15 U.S.C. §§ 1681n and 1681o.

## JURISDICTION, VENUE, AND PARTIES

5. Jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

6. Venue is proper for this Court pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

7. Venue is proper in this District as Plaintiff is a natural person and a resident of Hillsborough County, Florida; the violations described in this Complaint occurred in this District; and Experian transacts business within this District.

8. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9. Experian is a corporation headquartered in the State of California, authorized to do business in the State of Florida through its registered agent, C T Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324.

10. Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Experian is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

11. Experian disburses such consumer reports to third parties under contract for monetary compensation.

## FACTUAL ALLEGATIONS

12. Recently, Plaintiff was reviewing her credit history with her mortgage broker and observed on her Experian credit report dated September 20, 2023, that Experian was incorrectly reporting Plaintiff as "deceased".

13. Specifically, one of her accounts with non-party, JPMorgan Chase Bank Card Services, was incorrectly reporting Plaintiff as deceased since on or about September 15, 2023.

14. On or about November 2, 2023, Plaintiff obtained a copy of her Experian credit report and observed that Experian continued to report Plaintiff as deceased. Interestingly, Plaintiff also observed that Experian was reporting on-time payments in October 2023 on other accounts including accounts with JPMorgan Chase Bank.

15. Due to the inaccurate reporting, on or about November 3, 2023, Plaintiff mailed a detailed written dispute letter to Experian. In the letter, Plaintiff advised them that she was being incorrectly reported as deceased when she was in fact very much alive. In the letter, Plaintiff included a copy of her driver's license as proof of identity. Plaintiff also included images of the erroneous reporting, a photo of Plaintiff holding a copy of her driver's license and recently dated newspaper as proof she was living, and other supporting documents.

16. Plaintiff mailed her detailed written dispute letter to Experian via USPS Certified Mail, tracking number 7020 3160 0000 4502 1935.

17. Despite confirmation of delivery on November 27, 2023, Plaintiff never received dispute results in the mail from Experian.

4

18. On or about November 28, 2023, Plaintiff attempted to obtain a copy of her Experian credit report online but received a message that her report was unavailable.

19. Upon information and belief, Experian continues to inaccurately report Plaintiff as "deceased.

20. Experian has good reason to know that Plaintiff is not "deceased". For example, Experian is aware that Plaintiff is making payments for her open lines of credit. Plaintiff made timely payments to Capital One, Synchrony Bank, First Premier Bank, American Express, Comenity, Credit One Bank, and additional accounts to JPMorgan Chase Bank.

21. Despite this, Experian willingly chooses to continue reporting that Plaintiff is "deceased" even though Experian knows or has reason to know she is alive and well.

22. As a result of the action and/or inaction of Experian, Plaintiff has suffered damages, including, but not limited to:

    i. Monies lost by attempting to fix her consumer report. Plaintiff has suffered actual damages in postage paid, wasted ink and paper, and wasted time;

    ii. Loss of time attempting to cure the errors;

  iii. Emotional distress including but not limited to anger, worry, frustration, embarrassment, fear, and sleeplessness. Plaintiff has been physically affected by Experian's inaccurate reporting;

  iv. Apprehensiveness to apply for credit due to the fear of rejection; and

  v. Defamation as Experian published inaccurate information to third party entities.

## COUNT I
### Violation of 15 U.S.C. § 1681e(b) as to Defendant, Experian Information Solutions, Inc. (Negligent)

23. Plaintiff re-alleges and re-incorporates paragraphs one (1) through twenty-two (22) as if fully stated herein.

24. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure the maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff. Despite Experian believing that Plaintiff was dead, it published her credit report (containing the "customer deceased") to furnishers. Moreover, Experian has records of timely payments on her open accounts.

25. The FCRA requires that Experian must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

26. The FCRA requires that Experian must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§ 1681e(a) & 1681b. Experian, despite having access to the Social Security Death Index, refuses to cross-check individuals for accuracy of deceased reporting.

27. Experian places a "deceased" notation or marking on reports when it is advised from any of their many data furnishing sources that a given consumer is deceased.

28. Experian does not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

29. Experian does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

30. Indeed, Experian employs no procedures at all which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

31. Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, Experian employs no procedures which assure

that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

32. Once a "deceased" mark is placed upon a consumer's report, Experian will not calculate and will not provide a credit score for that consumer.

33. Experian has received and documented thousands of disputes from consumers complaining that Experian's credit reports have them erroneously marked as "deceased."

34. Nevertheless, Experian employs no procedures which assure that a consumer marked as "deceased" on Experian's reports is, in fact, deceased.

35. Experian has no independent procedure to change an erroneous deceased status on its own and will merely parrot their furnishing source.

36. Nor does Experian employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

37. For years after a consumer's actual death, Experian will continue to sell for profit credit reports about that consumer.

38. Experian will only remove a deceased consumer's file from its credit reporting database when it is no longer valuable to Experian – meaning that nobody is continuing to buy those reports.

39. Experian charges third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

40. Experian profits from the sale of reports of the deceased.

41. Experian has in their credit reporting database hundreds of thousands of "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

42. Experian knows that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to Experian to be a common and major source of identity theft.

43. Experian warns the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's credit information or report.

44. Experian has no similar death certificate, executorship paper, or any other proof requirements for their data sources which report a consumer as deceased or for the buyers of their reports which access the purportedly deceased consumer's information.

45. Indeed, Experian sells reports of the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

46. For consumers who are deceased, there exists no permissible purpose under the FCRA for Experian to ever sell their credit reports, absent a court order.

47. Experian knows that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

48. At all times pertinent hereto, Experian was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Experian.

49. At all times pertinent hereto, the conduct of Experian, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of Plaintiff herein.

50. The conduct, action and/or inaction of Experian was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 USC § 1681o.

51. Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 USC § 1681o.

WHEREFORE, Plaintiff, MELINDA MONAGHAN, respectfully requests that this Court award actual damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; and grant all such additional relief as the Court deems appropriate.

### COUNT II
### Violation of 15 U.S.C. § 1681e(b) as to
### Defendant, Experian Information Solutions, Inc. (Willful)

52. Plaintiff re-alleges and re-incorporates paragraphs one (1) through twenty-two (22) as if fully stated herein.

53. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure the maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff. Despite Experian believing that Plaintiff was dead, it published her

credit report (containing the "customer deceased") to furnishers. Moreover, Experian has records of timely payments on her open accounts.

54. The FCRA requires that Experian must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

55. The FCRA requires that Experian must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§ 1681e(a) & 1681b. Experian, despite having access to the Social Security Death Index, refuses to cross-check individuals for accuracy of deceased reporting.

56. Experian places a "deceased" notation or marking on reports when it is advised from any of their many data furnishing sources that a given consumer is deceased.

57. Experian does not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

58. Experian does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

59. Indeed, Experian employs no procedures at all which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

60. Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, Experian employs no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

61. Once a "deceased" mark is placed upon a consumer's report, Experian will not calculate and will not provide a credit score for that consumer.

62. Experian has received and documented thousands of disputes from consumers complaining that Experian's credit reports have them erroneously marked as "deceased."

63. Nevertheless, Experian employs no procedures which assure that a consumer marked as "deceased" on Experian's reports is, in fact, deceased.

64. Experian has no independent procedure to change an erroneous deceased status on its own and will merely parrot their furnishing source.

65. Nor does Experian employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

66. For years after a consumer's actual death, Experian will continue to sell for profit credit reports about that consumer.

67. Experian will only remove a deceased consumer's file from its credit reporting database when it is no longer valuable to Experian – meaning that nobody is continuing to buy those reports.

68. Experian charges third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

69. Experian profits from the sale of reports of the deceased.

70. Experian has in their credit reporting database hundreds of thousands of "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

71. Experian knows that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to Experian to be a common and major source of identity theft.

72. Experian warns the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's credit information or report.

73. Experian has no similar death certificate, executorship paper, or any other proof requirements for their data sources which report a consumer as deceased or for the buyers of their reports which access the purportedly deceased consumer's information.

74. Indeed, Experian sells reports of the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

75. For consumers who are deceased, there exists no permissible purpose under the FCRA for Experian to ever sell their credit reports, absent a court order.

76. Experian knows that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

77. At all times pertinent hereto, Experian was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Experian.

78. At all times pertinent hereto, the conduct of Experian, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of Plaintiff herein.

79. The conduct, action and/or inaction of Experian was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n.

80. Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 USC § 1681n.

WHEREFORE, Plaintiff, MELINDA MONAGHAN, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; and grant all such additional relief as the Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MELINDA MONAGHAN, demands judgment for actual, statutory, compensatory, and punitive damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC., jointly and severally; attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

DATED this 11th day of January 2024.

Respectfully submitted,

*Attorney for Plaintiff*

**/s/Christopher Legg**
Christopher W. Legg, Esq.
Florida Bar No.: 0044460
The Consumer Lawyers PLLC
412 E. Madison St, Ste 916
Tampa, FL 33602
Cell: (813)299-8537
Facsimile: (844)951-3933
Primary Email:
chris@theconsumerlawyers.com
Secondary Email:
Lisa@theconsumerlawyers.com

**/s/ Frank H. Kerney, III, Esq.**
Frank H. Kerney, III, Esq.
Florida Bar No.: 88672
Tennessee Bar No.: 035859
The Consumer Lawyers PLLC
412 E. Madison St. Ste 916
Tampa, Florida 33602
Telephone: 844.855.9000

Facsimile: 844.951.3933
Frank@TheConsumerLawyers.com

**/s/ *Octavio Gomez***
Octavio "Tav" Gomez, Esq.
Florida Bar #: 0338620
Georgia Bar #: 617963
Pennsylvania Bar #: 325066
The Consumer Lawyers PLLC
412 E. Madison St. Ste 916
Tampa, Florida 33602
Cell: (813) 299-8537
Facsimile: (844) 951-3933
Tav@theconsumerlawyers.com
Secondary Email:
Lisa@theconsumerlawyers.com
*Attorneys for Plaintiff*